IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTINA DRAKE, JOSEPH BORUCKI, and JOSHUA LEISNER, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHOP HOSPITALITY LLC d/b/a CHICAGO CHOP HOUSE, MATTHEW McCAHILL, PHILIP MARTIN, PETER HODO, and ADAM WILL,<br><br>Defendants. | Case No. 18-cv-04162<br><br>JURY TRIAL DEMANDED |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Kristina Drake, Joseph Borucki and Joshua Leisner, individually and on behalf of all other similarly-situated employees, by and through their attorney, Law Offices of Daniel Zemans, LLC, bring this collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. (FLSA), and class action pursuant to the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq*., and the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, Illinois, Municipal Code § 1-24-010, *et seq*. ("Chicago Wage Ordinance") to recover unpaid wages, liquidated damages, statutory penalties, attorney's fees and costs, and allege, upon personal belief as to themselves and their own acts, and as for all other matters upon information and belief, and based upon the investigation made by their counsel, as follows:

## INTRODUCTION

1. Named Plaintiffs and the persons they represent were tipped employees of Defendants working as servers and bartenders at the Chicago Chop House restaurant during some or all of November 2017 through July 2020 ("the relevant time period").

2. Defendants paid these employees sub-minimum hourly wages under the tip-credit provisions of the FLSA, the IMWL, and the Chicago Wage Ordinance, all of which allow employers to pay "tipped employees" less than the minimum wage, provided employers comply with certain statutory requirements.

3. Defendants violated these requirements by requiring their servers and bartenders to participate in an invalid tip pool that was mandatory, involuntary and controlled by management.

4. Under Defendants' tip pool, servers and bartenders were required to pay a portion of their tips every shift they worked to ownership and to the General Manager of the restaurant.

5. As a result of Defendants' improper use of the tip credit provisions of FLSA, IMWL, and Chicago Wage Ordinance, Defendants paid regular compensation to Named Plaintiffs and the persons they represent based on an improperly low regular rate of pay.

6. A lawsuit was previously filed against Defendants McCahill and Chop Hospitality, who moved to compel arbitration, but then refused to participate in arbitration. The American Arbitration Association has stated it will not administer any future employment matters involving Chop Hospitality. Therefore, the arbitration agreement is no longer enforceable.

**JURISDICTION AND VENUE**

7. Jurisdiction is invoked under the provisions of the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state and municipal law claims pursuant to 28 U.S.C. § 1367.

8. This action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2), in that the Named Plaintiffs reside in this District, Defendant Chop Hospitality is registered in this District, Defendant McCahill is a resident of this District,

Defendants Hodo, Will and Martin chose to do business in this District, the entire claim arose in the City of Chicago in this District, and most of the relevant witnesses are located in this District.

## THE PARTIES

9. Named Plaintiff Joshua Leisner, a resident of Chicago, Illinois, worked as an hourly-paid, non-exempt server for Defendants at their restaurant located at 60 West Ontario Street, Chicago, Illinois, during the applicable statute of limitations period.

10. Named Plaintiff Joseph Borucki, a resident of Chicago, Illinois, worked as an hourly-paid, non-exempt bartender for Defendants at their restaurant located at 60 West Ontario Street, Chicago, Illinois, during the applicable statute of limitations period.

11. Named Plaintiff Kristina Drake, a resident of Chicago, Illinois, worked as an hourly-paid, non-exempt server for Defendants at their restaurant located at 60 West Ontario Street, Chicago, Illinois, during the applicable statute of limitations period.

12. Named Plaintiffs, like those they seek to represent, were "tipped employee(s)" of Defendants as defined by the FLSA, 29 U.S.C. §203(d) and 29 U.S.C. §203(m), the IMWL, 820 ILCS 105/3(d), and the Chicago Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

13. Named Plaintiffs and those they seek to represent all shared similar job titles, training, compensation plans, job descriptions and job requirements, including the requirement that they participate in Defendants' tip pool.

14. Defendant Chop Hospitality, LLC is an Illinois corporation doing business as Chicago Chop House.

15. At all material times, Chop Hospitality, LLC regularly and customarily transacted business within this judicial district.

16. Defendant Matthew McCahill was, at all relevant times, an owner and operator of Chop Hospitality, LLC, which has operated the Chicago Chop House restaurant since in or around mid-November 2017. At all material times, Matthew McCahill was involved in the day to day business operation of Chop Hospitality, LLC, and had the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on corporate checking accounts, including payroll accounts, and the authority to make decisions regarding wage and hour classifications, employee compensation, employee timekeeping and capital expenditures. At all relevant times, Matthew McCahill acted and had responsibility to act on behalf and in the interests of Chop Hospitality, LLC in devising, directing, implementing and supervising the wage and hour practices and policies relating to hourly-paid employees, including those challenged in this action.

17. Defendant Peter Hodo is an owner and operator of Chop Hospitality, LLC, which has operated the Chicago Chop House restaurant since in or around November 2017. At all material times, Mr. Hodo had the authority to make decisions regarding wage and hour classifications and employee compensation. At all relevant times, Mr. Hodo acted and had responsibility to act on behalf and in the interests of Chop Hospitality, LLC in devising, directing, implementing and supervising the wage and hour practices and policies relating to hourly-paid employees, including those challenged in this action.

18. Defendant Philip Martin is an owner and operator of Chop Hospitality, LLC, which has operated the Chicago Chop House restaurant since in or around November 2017. At all material times, Mr. Martin had the authority to make decisions regarding wage and hour classifications and employee compensation. At all relevant times, Mr. Martin acted and had responsibility to act on behalf and in the interests of Chop Hospitality, LLC in devising, directing, implementing and

supervising the wage and hour practices and policies relating to hourly-paid employees, including those challenged in this action.

19. Defendant Adam Will is an owner and operator of Chop Hospitality, LLC, which has operated the Chicago Chop House restaurant since in or around November 2017. At all material times, Mr. Will had the authority to make decisions regarding wage and hour classifications and employee compensation. At all relevant times, Mr. Will acted and had responsibility to act on behalf and in the interests of Chop Hospitality, LLC in devising, directing, implementing and supervising the wage and hour practices and policies relating to hourly-paid employees, including those challenged in this action.

20. Defendants dictated, controlled and ratified wage and hour policies and all related employee compensation policies.

21. At all material times, Defendants were an "enterprise engaged in commerce" within the meaning of the FLSA. 29 U.S.C. 203(s).

22. At all material times, all Defendants were "employers" within the meaning of the FLSA, 29 U.S.C. §203(d), the IMWL, 820 ILCS 105/3(c), and the Chicago Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

23. At all material times, all Named Plaintiffs and those they represent were employees within the meaning of the FLSA, 29 U.S. § 203(e), and the IMWL, 820 ILCS 105/3(d), and the Chicago Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010.

## NATURE OF THE SUIT

24. Named Plaintiffs bring a collective action under the FLSA on behalf of themselves and others who currently or formerly worked as hourly paid, non-exempt servers, bartenders, or other tipped employees performing similar responsibilities for the Defendants in Illinois at any time

5

during the three years immediately preceding the filing of this Complaint (hereinafter "FLSA Statutory Period").

25. Named Plaintiffs bring class claims under the IMWL and the Chicago Wage Ordinance on behalf of themselves and others who currently or formerly worked as hourly paid, non-exempt servers, bartenders, or other tipped employees performing similar responsibilities for the Defendants in Illinois at any time during the three years immediately preceding the filing of this Complaint (hereinafter "IMWL and Wage Ordinance Statutory Period").

## COLLECTIVE ACTION ALLEGATIONS

26. The FLSA allows employers to pay tipped employees less than the minimum wage by including a "tip credit" in the calculation of those employees' actual wages. 29 U.S.C. 203(m).

27. In order to take advantage of the tip credit and pay tipped employees less than minimum wage, employers must tell employees about the tip credit and tipped employees must get to keep all the tips they receive, except those tips included in a valid tipping pool among employees who customarily and regularly receive tips. *Id*.

28. Defendants have violated the FLSA by requiring their servers and bartenders to participate in an invalid tip pool, whereby servers and bartenders had to share their tips with Defendants and the General Manager, all of whom are ineligible to participate in a valid tip pool.

29. Plaintiffs' participation in the tip pool was mandatory and was imposed by Defendants as a condition of Plaintiffs' employment.

30. Defendants purchased the Chicago Chop House restaurant in or around mid-November 2017.

31. During the entire relevant time period, which ranges from approximately mid-November 2017 through July 1, 2018, as part of their contributions to the tip pool, servers and bartenders had to put in $25 for each shift they worked.

32. The previous owners of the Chop House had implemented an illegal tip pool under which they falsely claimed the fixed contributions went to food runners when, in fact, the food runners received a set hourly wage and the ownership retained the tip money.

33. Upon taking over the restaurant, the Defendants saw that windfall and collectively decided to continue operating that same illegal scheme.

34. Under the previous ownership, the claim that the tip pool money went to food runners did not sit well with servers and bartenders because they knew the food runners were paid an hourly salary and were not receiving tips.

35. With the new ownership group in place, one server, George Euring, repeatedly asked Mr. McCahill about the $25 fee he paid every shift and Mr. McCahill claimed the new ownership group was aware of the issue and would look into it.

36. In December 2018, aware that their employees were not happy with the ongoing illegal tip pool, Defendants McCahill, Hodo, Martin and Will decided to stop using the illegal tip pool they inherited.

37. But rather than let the servers and bartenders keep the tips they earned, the four individual Defendants willfully created a new illegal tip pool on behalf of Chop Hospitality.

38. Doris Siemen had been the General Manager of the Chop House for years prior to Chop Hospitality LLC buying the restaurant and the new owners kept her on in that role.

39. In December 2018, Defendants lowered Ms. Siemen's base salary but then gave her the specific tips at issue as well as paid vacation and paid parking, ensuring her actual reduction in pay was negligible to non-existent.

40. At that same time, Defendants technically changed Ms. Siemen's title from General Manager to maître d', but that was only on paper to support their scheme to keep taking tips from Named Plaintiffs and the persons they represent.

41. Indeed, they did not tell any servers or bartenders that Ms. Siemen was the maître d for approximately six months, and they certainly did not tell any servers and bartenders that their tips were going to their boss, Ms. Siemen.

42. Ms. Siemen continued to function as the General Manager until she left the company in mid-July 2018.

43. Ms. Siemen supervised front of house employees including all servers, bartenders, hosts and other managers.

44. Ms. Siemen hired, disciplined, and fired employees.

45. Ms. Siemen even had authority over managers. For example, when an employee complained to her about Claudio Aceves, a manager, she responded that if she had to write Mr. Aceves up one more time, she would have to fire him.

46. Ms. Siemen set the schedules for all front of house employees.

47. If front of house employees wanted time off, they asked Ms. Siemen and she had the authority to say yes or no.

48. Ms. Siemen assigned which tables which servers would work each night.

49. Ms. Siemen ran the pre-shift meetings every night she worked. At those meetings, she made sure that all servers and bartenders were properly in uniform; she told them what food and

wines they should push customers to purchase that evening; she explained what employees should expect in terms of clientele that night; and she quizzed servers and bartenders, making sure they could properly describe various menu items.

50. Ms. Siemen had the power to tell servers and bartenders that they did not have to pay some or all of the $25 tip into the tip pool, something she periodically did on nights with few customers.

51. Ms. Siemen, on both LinkedIn and Culinary Agents (essentially a LinkedIn for the hospitality industry) makes clear that she was the General Manager of the Chicago Chop House for her entire tenure at the restaurant.

52. Ms. Siemen told customers that she was the General Manager.

53. When customers asked servers to speak with a manager, if Ms. Siemen was working, they brought her to speak to those customers.

54. While Defendants did not tell Named Plaintiffs or any other servers or bartenders that Defendants considered Ms. Siemen to be a maître d' and not the General Manager, they did make a significant change in furtherance of their illegal tip pool.

55. It was longstanding policy at the Chop House for servers and bartenders, at the end of each shift, to fill out "check out sheets." On each sheet, they had to fill out various details about their tips for that shift.

56. At the time the Defendants took over the restaurant, the check out sheets included a line where a set amount was earmarked for "front of house."

57. In furtherance of their scheme to use tip money earned by servers and bartenders to pay Ms. Siemen's salary, Defendants changed that line on the check out sheets to read "MAITRE D' TIPS."

9

58. Because there was no maître d' at the Chop House, that change caught the attention of some servers and bartenders.

59. In or around March 2018, Plaintiff Joshua Leissner asked Ms. Siemen where his $25 shift fee actually went and not only did she refuse to answer, she told him that if he did not like paying it, he could quit and go work somewhere else.

60. On multiple occasions in April and May, 2018, Plaintiffs Leisner and at least one other server, George Euring, asked Claudio Aceves, a manager, where the tip pool contributions earmarked for the nonexistent maître d' actually went. Aceves said he did not know and would check with management and finally, after repeated inquiries by Leisner and Euring, Aceves said he asked and was told to leave it alone.

61. Eventually, in May 2018, Mr. McCahill told servers and bartenders at a lineup meeting before service began for the day that the maître d' fees went to Defendant Siemen, who is the General Manager.

62. This was a shocking revelation as neither the Plaintiffs nor any of those they seek to represent had any idea that they had been required to share their hard-earned tips with their manager, Ms. Siemen.

63. Mr. Euring, a server, then told Ms. Siemen that Mr. McCahill had told them the tips were being shared with her, Ms. Siemen said, "I can't believe he told you that."

64. Keeping tips for themselves, as Defendants did in the early part of the class period and sharing those tips with Ms. Siemen, which they did for the remainder, were both violations of the FLSA.

65. The FLSA requires employers to pay minimum wages for all hours worked. 29 U.S.C. § 201, *et seq.*

66. As a result of Defendants improper use of the FLSA's tip credit provisions, Defendants paid regular compensation to Plaintiffs based on an improperly low regular rate of pay.

67. At all material times, Defendants' failure to pay wages at the correct rate of pay was willful.

68. Accordingly, Plaintiffs bring this collective action to recover unpaid regular wages under the FLSA.

## CLASS ACTION ALLEGATIONS

69. The IMWL allows employers to pay an hourly wage below the Illinois state minimum to certain tipped employees by including a "tip credit" in the calculation of those employees' actual wages. 820 ILCS 105/4(c).

70. However, for an employer to legally apply the tip credit, the employer must satisfy several conditions, including providing "substantial evidence that the amount claimed … was received by the employee in the period for which the claim of exemption is made, and no part thereof was returned to the employer." *Id.*

71. Similarly, the Chicago Wage Ordinance allows employers allows employers in the City of Chicago to pay an hourly wage below the Chicago city minimum to certain tipped employees. Chicago, Illinois, Municipal Code § 1-24-030(a).

72. The Chicago Wage Ordinance also requires that no part of the gratuities be returned to the Employer. Chicago, Illinois, Municipal Code § 1-24-030(b).

73. All hours worked at the Chicago Chop House restaurant by Named Plaintiffs and those they represent were worked in Chicago, Illinois.

74. Defendants violated the IMWL and the Chicago Wage Ordinance by requiring their servers and bartenders to participate in an invalid tip pool.

75. Under Defendants' mandatory tip pool, servers and bartenders were required to pay, among other payments not at issue here, $25 per shift into the tip pool, initially allegedly to be shared with food runners and later allegedly to be shared with a maître d'. In fact, management and Defendants kept the money as food runners did not receive tip money and the restaurant did not have a maître d'.

76. Plaintiffs' participation in the tip pool was mandatory and imposed by Defendants as a condition of Plaintiffs' employment.

77. The IMWL requires employers to pay employees minimum wages for all hours worked. 820 ILCS 105/4, *et seq.* Section 105/12(a) makes clear that employers who violate the provisions of the IMWL are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments and other appropriate relief. 820 ILCS 105/12(a).

78. The Chicago Wage Ordinance requires employers to pay employees minimum wages for all hours worked. Chicago, Illinois, Municipal Code § 1-24-010, *et seq*. Section 1-24-110 makes clear that employers who violate the provisions of the Wage Ordinance are liable to affected employees for three times the amount of any underpayment, costs, and attorney's fees.

79. As a result of Defendants' improper use of the tip credit provisions of the IMWL and the Chicago Wage Ordinance, Defendants paid regular compensation to Plaintiffs based on an improperly low regular rate of pay.

80. Accordingly, Plaintiffs bring their claims for relief individually and as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. The IMWL class is defined as:

All individuals who are currently or formerly employed by one or more of the Defendants as servers, bartenders or bussers in Illinois at any time from June 14, 2015 through the present (hereinafter "the IMWL Class").

81. The Chicago Wage Ordinance class is defined as:

All individuals who are currently or formerly employed by one or more of the Defendants as servers, bartenders or bussers in Chicago at any time from July 1, 2015 through the present (hereinafter "the Chicago Wage Ordinance Class").

82. This action is properly maintainable as a class action under Rules 23(a) and (b) because:

    A. The class is so numerous that joinder of all members is impracticable;

    B. There are questions of law or fact that are common to the class;

    C. The claims of the Named Plaintiffs are typical of the claims of the class; and,

    D. The Named Plaintiffs will fairly and adequately protect the interests of the class.

### Numerosity

83. On information and belief, the total number of putative class members represents over forty individuals. The exact number of class members can be determined from Defendants' payroll records.

### Commonality

84. There are numerous and substantial questions of law and fact common to members of the IMWL and Chicago Wage Ordinance classes including, but not limited to, the following:

    A. Whether Defendants required Plaintiffs to participate in a tip pool;

    B. Whether Defendants distributed Plaintiffs' tips to employees who do not customarily and regularly receive tips;

    C. Whether Defendants kept money for themselves that was left by customers as tips for servers;

    D. Whether Defendants kept money for themselves that was left by customers as tips for bartenders;

  E. Whether Defendants took a "tip credit" in an amount no more than 40% of the minimum wage;

  F. Whether Defendants provide substantial evidence that no part of Plaintiffs' tips was returned to Defendants;

  G. Whether Defendants failed to keep true and accurate records of the amount of tips received by Plaintiffs;

  H. Whether Defendants failed to keep true and accurate records of how they distributed Plaintiffs' tips; and,

  I. Whether Plaintiffs suffered damages and the proper measure of those damages.

85. Plaintiffs anticipate that Defendants will raise defenses that are common to the class.

86. The damages suffered by the class members arise from the same nucleus of operative facts. Moreover, damages can be calculated by using simple mathematical formulas.

## Adequacy

87. The Named Plaintiffs will fairly and adequately protect the interests of the class. They have retained experienced counsel that is competent in employment law and in the prosecution of complex litigation.

## Typicality

88. The claims asserted by the Named Plaintiffs are typical of the class members they seek to represent. The Named Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

89. Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23.

**Superiority**

90. A class action is superior to other available means for the fair and efficient adjudication of this controversy because class treatment will allow a large number of similarly-situated persons, for whom individual joinder is impracticable, to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense of individual claims. Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for Named Plaintiffs and the class members to bring individual claims even if they were aware of their legal claims. Additionally, separate individual actions would create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impede the ability of class members to protect their interests.

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT: COLLECTIVE ACTION FOR UNPAID MINIMUM WAGES**

91. Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

92. As a result of Defendants' improper use of the tip credit provisions of the FLSA, Defendants paid wages to Plaintiffs based on an incorrectly low regular rate of pay.

93. At all material times, Defendants' failure to pay wages at the correct rate of pay was willful.

94. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages and other damages.

**COUNT II**

**VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW: CLASS ACTION FOR UNPAID MINIMUM WAGES**

95. Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

96. Plaintiffs are members of a class that meets the requirements for certification and maintenance of a class action pursuant to Rules 23(a) and (b).

97. Defendants violated the IMWL, 820 ILCS § 105, *et seq.,* by regularly and repeatedly failing to properly pay regular compensation to Plaintiffs.

98. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages and other damages.

**COUNT III**

**VIOLATION OF THE CHICAGO MINIMUM WAGE AND PAID SICK LEAVE ORDINANCE: CLASS ACTION FOR UNPAID MINIMUM WAGES**

99. Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

100. Plaintiffs are members of a class that meets the requirements for certification and maintenance of a class action pursuant to Rules 23(a) and (b).

101. Defendants violated the Minimum Wage Ordinance, Chicago, Illinois, Municipal Code § 1-24-010, *et seq,* by regularly and repeatedly failing to properly pay regular compensation to Plaintiffs.

102. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer lost wages and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, Kristina Drake Joseph Borucki, and Joshua Leisner, individually and on behalf of all others similarly situated, by and through their attorneys, Law Offices of Daniel Zemans, LLC, demand judgment against the Defendants, jointly and severally, and in favor of the Plaintiffs and all others similarly situated, for a sum that will properly, adequately and completely compensate Plaintiffs and the members of the class and collective action for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Certify a class under Counts II and III;

B. Appoint Law Offices of Daniel Zemans, LLC as class counsel under Counts II and III;

C. Order Defendants to file with this Court and furnish to Plaintiffs' counsel a list of all names, mailing addresses telephone numbers, and email addresses of all tipped employees employed by Defendants who currently work or have worked for Defendants at any point from November 1, 2017 through July 31, 2018, regardless of how many days they worked;

D. Authorize Plaintiffs' counsel to issue notice at the earliest possible time to all current and former tipped employees employed by the Defendants during the applicable statutory period, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to Count I in this lawsuit;

E. Declare and find that the Defendants committed one or more of the following acts:

  i. Violated the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*;

  ii. Willfully the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.*;

  iii. Violated the Illinois Minimum Wage Law, 820 ILCS §105, *et seq.*; and

  iv. Violated the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, IL, Municipal Code § 1-24-010, *et seq.*

D. Award compensatory damages, including all regular pay owed, in an amount according to proof;

E. Award compensatory damages, including restitution of the $25 per shift deduction taken from each class member that was retained by management, in an amount according to proof;

F. Award interest on all compensation due accruing from the date such amounts were due as required by the FLSA;

G. Award liquidated damages on all compensation due accruing from the date such amounts were due as required by the FLSA;

H. Award 2% per month interest on all compensation due accruing from the date such amounts were due until it is paid as required by the IMWL;

I. Award treble damages on all compensation due accruing from the date such amounts were due as required by the Chicago Minimum Wage and Paid Sick Leave Ordinance;

J. Award all costs and reasonable attorney's fees incurred prosecuting this claim;

K. Grant leave to amend to add claims under applicable state and federal laws;

L. Grant leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and,

M. For such further relief as the Court deems just and equitable.

Dated: March 3, 2020                            Respectfully Submitted,

                                                /s/ *Daniel Zemans*
                                                Daniel Zemans
                                                The Law Offices of Daniel Zemans, LLC
                                                500 N. Michigan Avenue, Suite 600
                                                Chicago, IL 60640
                                                Phone: (773) 706-7767
                                                Email: dzemans@zemans-law.com

                                                **ATTORNEY FOR PLAINTIFFS**