## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KRISTINA DRAKE, JOSEPH BORUCKI, JOSHUA LEISNER, and AUSTIN LYSY Individually, and on Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>CHOP HOSPITALITY LLC d/b/a CHICAGO CHOP HOUSE, MATTHEW McCAHILL, PHILIP MARTIN, PETER HODO, ADAM WILL, and JAMES LAWRENCE,<br><br>            Defendants. | Case No. 20 C 1574<br><br>Magistrate Judge Sunil R. Harjani |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs, current or former tipped employees who work or worked as servers and bartenders at the Chicago Chop House restaurant during some or all of November 2017 through the present, allege that the restaurant utilizes an invalid tip pool to pay servers and bartenders at an improperly low regular rate of pay. The parties have consented to this Court's jurisdiction, and currently pending before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint [34] on res judicata grounds. For the reasons set forth below, the motion is denied.

## <u>BACKGROUND</u>

In reviewing the sufficiency of a complaint for purposes of a motion to dismiss, the Court "construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [the nonmoving party's] favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir 2016) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th

Cir. 2010)).  It is also proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  The Court takes judicial notice of the documents from a previous lawsuit filed in this district because they form the basis for Defendants' motion to dismiss: *Leisner, et al. v. Chop Hospitality, LLC, et al.*, Case No. 18-cv-4612 (N.D. Ill.) (hereinafter the "*Leisner* Action").  *See* Fed. R. Evid. 201(b); *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."); *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1172, 1173 (7th Cir. 2010) (courts may "take judicial notice of prior proceedings in a case involving the same litigant.").

A.      **The Current *Drake* Action**

The instant action was filed on March 3, 2020.  Named Plaintiffs Kristina Drake, Joseph Borucki, Joshua Leisner, and Austin Lysy seek compensation for themselves and a class of current and former servers and bartenders based on allegations that Defendants Chop Hospitality LLC ("Hospitality"), Matthew McCahill, Philip Martin, Peter Hodo, Adam Will, and James Lawrence operated a mandatory tip pool that does not comply with the tip credit provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq*. ("IMWL"), the Illinois Wage Payment and Collection Act, ("IWPCA"), 820 ILCS 115/1, *et seq*., and the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, Illinois, Municipal Code § 1-24-010, *et seq*. ("Chicago Wage Ordinance") (hereinafter the "*Drake* Action").  In particular, Plaintiffs allege that Defendants kept money from the tip pool for themselves while claiming the money was going to food runners for one or two pay periods and then, for the next seven or eight months, illegally used tip pool money to pay a general manager.

2

Additionally, Defendants are accused of illegally deducting more money from Plaintiffs' tips than was necessary to pay their credit card fees. Defendant Hospitality purchased the Chicago Chop House restaurant in mid-November 2017 and McCahill, Martin, Hodo, Will, and Lawrence (the "McCahill Group") are the owners of Hospitality.

**B.      The Prior *Leisner* Action**

Prior to this suit, on June 14, 2018, Named Plaintiffs Joshua Leisner, Georgia Euring III, and Christina Callahan filed a one-count collective action complaint in the Northern District of Illinois against Chicago Chop House, Inc. ("CCHI"), Doris Siemen, Charles Patel, and Bharathbhai Patel as well as Hospitality and McCahill on behalf of servers and bartenders at the Chicago Chop House restaurant alleging a violation of the FLSA related to the restaurant's tip pool. *Leisner* Action, Doc. 1.[1] Specifically, the claims in the *Leisner* Action accused Chicago Chop House Inc. and the Patels of keeping money from the tip pool for themselves while claiming the money was going to food runners. Subsequently, the *Leisner* plaintiffs amended their pleading on July 24, 2018 and August 30, 2018, adding Manuel Rivas, a busser, as a Named Plaintiff and adding additional claims under the IMWL, the IWPCA, and the Chicago Wage Ordinance. *Id*., Docs. 11, 31. Charles Patel and Bharathbhai Patel (the "Patels") owned CCHI, which operated the Chicago Chop House restaurant until mid-November 2017, when the restaurant was sold to Hospitality. Siemen was the General Manager of the restaurant pre and post-sale for a period of time.

On September 11, 2018, Defendants Hospitality, McCahill, and Siemen filed a motion to compel arbitration. *Leisner* Action, Doc. 38. On December 6, 2018, District Judge Bucklo granted

---

[1]      The *Leisner* Action was originally assigned to District Judge Elaine E. Bucklo and Magistrate Judge Daniel G. Martin. Thereafter, Magistrate Judge Martin passed away on October 11, 2018, and when Judge Bucklo referred the matter to a magistrate judge for a settlement conference on March 27, 2019, the undersigned magistrate judge took over the case.

the motion to compel arbitration as to all claims brought by or on behalf of plaintiffs who signed the arbitration agreements and denied the motion as to all claims brought by or on behalf of plaintiffs who did not sign that agreement.[2] *Id.*, Docs. 68, 69. Thereafter, Hospitality and McCahill did not participate in the *Leisner* Action. *Id.*, Doc. 131 at 3, ¶ 12. Siemen remained in the case only for any liability she may have had for events prior to the sale of the restaurant in mid-November 2017. *Id.*, Doc. 120 at 3.

On December 13, 2018, the Judge Bucklo granted Plaintiffs' motion to conditionally certify a collective action and facilitate notice pursuant to 29 U.S.C. § 216(b). *Leisner* Action, Doc. 72. Twenty-four individuals opted in, creating a total class of 27 plaintiffs. Plaintiffs did not move to certify a class under the IMWL, the IWPCA, or the Chicago Wage Ordinance. On March 27, 2019, Judge Bucklo referred the case to the undersigned magistrate judge to conduct a settlement conference. *Id.*, Docs. 90, 92.[3]

At a settlement conference before this Court on December 16, 2019, Named Plaintiffs Euring, Callahan and Rivas and Defendants CCHI, Charles Patel, Bharathbhai Patel, and Doris Siemen agreed to settle all claims accruing from the start of the relevant statutes of limitations periods through sale of the restaurant in mid-November 2017. *Leisner* Action, Docs. 127, 130, 131 at 3, ¶ 10. Two days later in a minute entry, this Court noted that that the parties at the settlement

---

[2]     Plaintiffs point out that they did not object to the motion to compel arbitration to the extent it covered claims that accrued after the sale of the restaurant. The order compelling arbitration found that "all claims against Hospitality brought by or on behalf of plaintiffs who signed arbitration agreements with Hospitality are subject to arbitration. This is true even of these plaintiffs' claims that accrued prior to Hospitality's acquisition of the restaurant." *Leisner* Action, Doc. 69 at 3. Judge Bucklo also held that claims brought by or on behalf of putative plaintiffs who did *not* sign the arbitration agreement could proceed in the *Leisner* Action, including claims accruing after Hospitality's acquisition of the restaurant. *Id.* at 4.

[3]     On September 16, 2019, the *Leisner* Action was reassigned to District Judge Steven C. Seeger. *Leisner* Action, Doc. 116.

conference had represented that Defendants Hospitality and McCahill were no longer defendants in the case because Judge Bucklo's December 6, 2018 Order compelled them to arbitrate but there was no separate dismissal order as to these defendants. *Id.*, Doc. 130. Accordingly, the Court directed the parties to file a motion to dismiss Hospitality and McCahill without prejudice with the district court.[4] *Id.*

On December 27, 2019, counsel for all parties, including counsel for Hospitality and McCahill, filed an Agreed Motion for Voluntary Dismissal of Hospitality and McCahill.[5] *Leisner* Action, Doc. 131. In the motion, the parties all agreed that the dismissal should be without prejudice and that the settlement agreement covered "claims accruing from the start of the relevant statutes of limitations periods through the sale of the restaurant in mid-November 2017." *Id.*, Doc. 131 at 3, ¶10. The parties further agreed that after the December 6, 2018 Order compelling arbitration, "Plaintiff Leisner ceased his involvement in this case as did Defendants Chop Hospitality LLC and Matthew McCahill." *Id.*, Doc. 131 at 3, ¶12. The parties requested an order dismissing Hospitality and McCahill from the *Leisner* Action "without prejudice so the remaining parties can proceed with their agreed upon settlement." *Id.* at 3. On December 30, 2019, District Judge Seeger dismissed Hospitality and McCahill as defendants without prejudice. *Id.*, Doc. 133.

That same day, following the dismissal of Hospitality and McCahill, the *Leisner* Action was reassigned to this Court by consent of the remaining parties. *Leisner* Action, Docs. 128, 134. On January 31, 2020, a settlement agreement was fully executed between Named Plaintiffs Euring, Callahan, and Rivas and 24 opt-in Plaintiffs, CCHI, Charles Patel, and Bharathbhai Patel.

---

[4]     The Court further noted that after Hospitality and McCahill were properly terminated, the remaining defendants desire to consent to the jurisdiction of the magistrate judge could be addressed. *Leisner* Action, Doc. 130.

[5]     Counsel for Hospitality and McCahill remained involved in the case due to her representation of Siemen on the pre-sale claims.

Siemen was not a party to the settlement and Plaintiffs moved to dismiss Siemen without prejudice from the *Leisner* Action on February 7, 2020. *Id*., Doc. 136. This Court granted Plaintiffs' Unopposed Motion to Voluntarily Dismiss Defendant Doris Siemen on February 11, 2020. *Id*., Doc. 138.

On April 6, 2020, after consideration of the parties' Joint Motion for Approval of FLSA Settlement, this Court dismissed the *Leisner* "action, and all claims asserted or that could have been asserted therein . . in its and their entirety with prejudice as to all Plaintiffs" (the "*Leisner* Final Judgment"). *Leisner* Action, Doc. 149. The Settlement and General Release Agreement (the "*Leisner* Settlement Agreement") is attached to the Joint Motion for Approval of FLSA Settlement. *Id*., Doc. 139-1.

In the meantime, on January 6, 2020, Plaintiff Leisner filed a Demand for Arbitration against Hospitality and McCahill. Hospitality and McCahill refused to participate in arbitration, and on February 26, 2020, the American Arbitration Association ("AAA"), stated that it would not administer any future employment matters involving Hospitality. *Drake* Action, Doc. 21 at 3, ¶ 8; doc. 42, Exh. D.

## **DISCUSSION**

Defendants now argue in their motion to dismiss that Plaintiffs' claims in this case are barred by the doctrine of res judicata. They move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court initially notes that "*res judicata* is an affirmative defense, pursuant to which dismissal under Rule 12(b)(6) is generally not appropriate." *Clark & Leland Condominium, L.L.C. v. Northside Community Bank*, 110 F.Supp.3d 866, 868 (N.D. Ill. 2015); *U.S. v. Rogers Cartage Co.*, 794 F.3d 854, 860 (7th Cir. 2015) (since an affirmative defense is "external to the complaint," motions for dismissal on the basis of an

6

affirmative defense should be made under Rule 12(c)). That said, Defendants use of Rule 12(b)(6) here "is of no consequence" because the uncontested history of the *Leisner* Action is "everything that the . . . court need[s] to know to rule on the defense." *Stelmokas v. Bank of America, N.A.*, 819 F. App'x 441, 443 (7th Cir. 2020), *reh'g denied* (Oct. 21, 2020). Moreover, Plaintiffs do not object to proceeding based on the current briefing.

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Thus, "'[w]hen a defendant raises *res judicata* as a defense and it is clear from the complaint's face, and matters of which the district court may take judicial notice[,] that the plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is proper.'" *Clark & Leland Condominium, LLC*, 110 F.Supp.3d at 868-69 (quoting *Arthur Anderson LLP v. Fed. Ins. Co.*, 2007 WL 844632, at *7 (N.D. Ill. 2007)).

The test for res judicata in the Seventh Circuit has three elements: "(1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016). When these three requirements are met, res judicata "bars any claims that were litigated or could have been litigated in a previous action" *Id*. Because res judicata is an affirmative defense, Defendants bear the burden of showing that the preclusive doctrine applies. *Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir. 1995).

Defendants contend that the doctrine of res judicata bars all claims in the Amended Complaint because the causes of action in both lawsuits are the same; there is an identity of parties or their privies; and the April 6, 2020 order was a final judgment on the merits. Plaintiffs dispute the applicability of all three res judicata elements because Defendants Hospitality and McCahill were not part of the *Leisner* Action for more than a year before that case settled, having been dismissed without prejudice after filing a motion to compel arbitration. As explained below, the Court finds that res judicata does not bar the present action because: (1) Plaintiffs' arbitrable claims were not and could not have been asserted in the *Leisner* Action; (2) Hospitality and McCahill were not parties when this Court entered final judgment in the *Leisner* Action; and (3) the terms of the approved *Leisner* Settlement Agreement upon which the final judgment was based excluded claims that arose against Hospitality or McCahill after the sale of the restaurant.

## A.      Identity of Causes of Action

Regarding the first requirement necessary to establish res judicata, courts generally consider whether the claims in the two cases "arise out of the same set of operative facts or the same transaction." *Kilburn-Winnie v. Town of Fortville*, 891 F.3d 330, 333 (7th Cir. 2018). Plaintiffs argue that while the claims against the two sets of defendant owners of the restaurant were based on some of the same laws, the facts underlying the claims and the way the defendants broke the law were different.

There can be no question that some of the plaintiffs' claims raised in the *Leisner* Action are identical to some of the claims raised the Amended Complaint in this case, and Plaintiffs do not argue otherwise. However, because Hospitality's arbitration agreement subjected those identical claims brought under the FLSA and other wage statutes to mandatory arbitration, the district court granted Hospitality and McCahill's motion to compel arbitration as to all claims brought by or on behalf of plaintiffs who signed the arbitration agreements. Thus, the wage claims

raised by Plaintiffs who signed arbitration agreements with Hospitality could not have been raised in the *Leisner* Action, because the district court under the Federal Arbitration Act and Hospitality's arbitration agreement was unable to entertain those other theories of relief in the same action. *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 416 (N.D. Ill. 2012) (finding res judicata "simply inapplicable" where plaintiffs' "non-ECPA claims could not have been litigated in the present proceeding because of [defendant's] arbitration agreement."). Indeed, in their reply brief in support of the motion to compel arbitration, Hospital and McCahill wrote that "all applicable parties agreed that all claims against McCahill and Chop Hospitality should be dismissed because Plaintiffs' *only* remedy for these claims must be pursued through private arbitration." *Leisner* Action, Doc. 53 at 2 (emphasis added).[6]

Moreover, the terms of the *Leisner* Settlement Agreement dictate the limits of claim preclusion. "Where a final judgment was based upon a settlement agreement, however, 'the express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement.'" *Daniels v. Rivers*, 2014 WL 6910492, at *7 (N.D. Ill. Dec. 9, 2014) (St. Eve, J.) (quoting *Toscano v. Commercial General Life Ins. Co.*, 288 F. App'x 36, 38 (3rd Cir. 2008)). "In determining the res judicata effect of an order of dismissal based upon a settlement agreement, courts attempt to effectuate the parties' intent. The best evidence of the parties' intent is the settlement agreement itself." *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004); *Arrow Gear Co. v. Downers Grove Sanitary Dist.*, 629 F.3d

---

[6]     The same logic applies to Defendants' argument that Plaintiffs have impermissibly split their claims among duplicative lawsuits. "Under the rule against claim-splitting, a plaintiff must allege in one proceeding all claims for relief arising out of a single nucleus of operative facts, or be precluded from raising those claims in the future." *Valentine*, 288 F.R.D. at 415. The rule against impermissible claim-splitting does not apply to Plaintiffs who signed the arbitration agreement because those wage claims were originally brought in the *Leisner* Action, but the district court granted Hospitality and McCahill's motion to compel arbitration of those claims. *Id.*

633, 639 (7th Cir. 2010) (subject to a qualification about institutional concerns, "[l]itigants who want to split a claim among different suits can do so"). Consequently, the scope of the preclusive effect of the *Leisner* Final Judgment "should not be determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law." *Id*; *see also Ruple v. Hartford Life & Acc. Ins. Co.*, 340 F. App'x 604, 610 (11th Cir. 2009) (a court should "look to the agreement itself to determine what claims the parties intended to be finally and forever barred by the dismissal.").

Under the express terms of the settlement documents in the *Leisner* Action, which are completely overlooked by Defendants, the parties intended and agreed that the settlement agreement excluded claims that arose against Hospitality and the McCahill Group after the sale of the restaurant. The *Leisner* Settlement Agreement plainly stated that it was between named Plaintiffs Euring, Callahan, and Rivas, on behalf of themselves and the 24 opt-in plaintiffs, and "defendants Chicago Chop House, Inc., Charles Patel, Doris Siemen, and Bharathbhai Patel (collectively referred to as 'Defendants')." *Leisner* Action, Doc. 139-1 at 2; *see also id.*, Jt. Motion for Approval of FLSA Settlement, Doc. 139 at 3 (confirming that "Defendants Chop Hospitality LLC, Matthew McCahill and Dories Siemen have been voluntarily dismissed from this case and are not a party to the Settlement Agreement."). The language of the *Leisner* Settlement Agreement clearly shows that those twenty-seven plaintiffs agreed to "forever discharge Defendants, and all managers and employees of CCHI (including but not limited to Doris Siemen), and Defendants' attorneys" from all claims there were or could have been made in the *Leisner* Action. *Id*., Doc. 139-1 at 8. Consistent with that language, the final judgment dismissed the *Leisner* "action, and all claims asserted or that could have been asserted" "in its and their entirety with prejudice as to all Plaintiffs." *Id.*, Doc. 149. Additionally, the *Leisner* Settlement Agreement unambiguously

10

stated that the "release does not include claims that arose against Doris Siemen, Chop Hospitality LLC, or Matt McCahill after Defendants sold the Chicago Chop House restaurant on or around November 13, 2018." *Id.*, Doc. 139-1 at 8.

After the district court compelled arbitration, the *Leisner* Action concerned only claims that arose before the sale of the restaurant. In this context, it is obvious that claims that accrued after the sale of the restaurant were not and could not have been brought during the *Leisner* Action. By its plain and unambiguous terms, the *Leisner* Settlement Agreement and therefore the *Leisner* Final Judgment explicitly excluded from the settlement and the release, claims that arose against Hospitality and McCahill after the sale of the restaurant and cannot reasonably be read to bar Plaintiffs' present suit. *Norfolk Southern Corp.*, 371 F.3d at 1291 ("to preclude a wider range of matters than those specified in the Agreement would frustrate the parties' expressed intent and bestow upon [the defendant] a windfall of immunity from litigation."). Thus, no identity of action exists between the two actions, and the *Leisner* Settlement Agreement did not preclude employee claims that accrued after the sale of the restaurant in a future suit against Hospitality and the McCahill Group.

It is true that Plaintiffs filed this lawsuit a little more than one month before the final judgment was entered in the *Leisner* Action, and so, Defendants argue, Plaintiffs could have sought to reinstate their claims against Hospitality and McCahill in that action which would have permitted the *Leisner* court to revisit Plaintiffs' claims which were dismissed without prejudice before entering the final judgment. While Defendants may be correct that Plaintiff might have been able to reinstate their claims in the *Leisner* Action even though all the remaining claims had been settled by that point, Defendants do not identify any case indicating that their failure to move to do so should act to bar Plaintiffs from bringing their current claims. There is no legal duty to

11

reinstate rather than bring a separate suit, especially where Plaintiffs' claims were dismissed without prejudice rather than stayed pending arbitration. *Tarau v. Coltea*, 2017 WL 3521410, at *4 (N.D. Ill. 2010) ("A dismissal without prejudice does not operate as an adjudication on the merits, so [plaintiff] could sue [defendant] again here or in another court.").

The only authority Defendants cite in support of their position that Plaintiffs' failure to seek reinstatement of their claims against Hospitality and McCahill in the *Leisner* Action is "fatal" to their current claims is *Czarniecki v. City of Chicago*, 633 F.3d 545, 550-51 (7th Cir. 2011), which is completely off point. *Czarniecki* is an employment discrimination case holding that the requirement to exhaust administrative remedies is no excuse for claim-splitting because a "discrimination claimant who is waiting for a right-to-sue letter on new claims that that are factually linked to an earlier suit . . . can easily ask the district court to stay the first case until the EEOC letter arrives." *Barr v. Bd. of Trustees of Western Illinois University*, 796 F.3d 837, 840 (7th Cir. 2015); *Czarniecki*, 633 F.3d at 551. Here, Plaintiffs did not impermissibly split claims their claims. Some of the plaintiffs originally brought their claims against Hospitality and McCahill in a single proceeding, the *Leisner* Action. *Czarniecki* says nothing about whether voluntarily dismissed claims should be reinstated in a prior case or filed in a new suit. Certainly, it does not hold that Plaintiffs were required to seek to reinstate their claims which were sent to arbitration in the *Leisner* Action rather than be allowed to file a new suit to avoid res judicata. Because the *Leisner* Settlement Agreement and Final Judgment based on the settlement agreement expressly excluded claims that accrued against Hospitality and McCahill after the sale of the restaurant, Plaintiffs were not required to seek reinstatement of their claims against Hospitality

and McCahill in the *Leisner* Action before entry of the final judgment to preserve their right to assert those claims.[7]

## B.     Identity of Parties

The second element, the identity of parties or their privies, is also not met here.  Although there is some overlap of opt-in plaintiffs in both suits, the defendants are not the same or in privity. The only common defendants between the two actions are Hospitality and McCahill, but they were not defendants at the time final judgment was entered in the *Leisner* Action.  In other words, Hospitality and McCahill were not "parties" to the *Leisner* Action after they were dismissed without prejudice.  Thus, there were no common defendants between the two actions at the time the *Leisner* Final Judgment was entered.  Further, Hospitality and McCahill do not contend that they were in privity with any of the remaining defendants who settled the *Leisner* Action. Defendants admit in their memorandum in support of their motion to dismiss that the prior owners of the restaurant are not affiliated with Hospitality or McCahill. *Drake* Action, Doc. 35 at 2. Hospitality and McCahill were not parties or in privity with a party to the *Leisner* Action at the time the final judgment was entered, and so there is no "identity of parties."

Furthermore, "[a]s a general rule, one is not bound by a judgment in an action in which he is not a party." *Exelon Generation Co., LLC v. Local 15, Intern. Broth. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 649 (7th Cir. 2008); *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a

---

[7]     Another problem with Defendants' res judicata defense, as Plaintiff point out, is that the *Leisner* Action settled in December 2019 and the settlement was intended to include all matters arising up to the date of the settlement. *Leisner* Action, Doc. 139-1 at 8-9.  Defendants do not address how claims in the *Drake* Action based on acts which occurred after the settlement of the *Leisner* Action could have been raised in the *Leisner* Action.  Accordingly, Plaintiffs are not barred by res judicata from litigating wage claims based on acts which occurred after the settlement of the *Leisner* Action.

judgment *in personam* in a litigation in which he is not designated as a party . . . ."). "As a consequence, '[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.'" *Richards v. Jefferson County,* 517 U.S. 793, 798 (1996) (quoting *Martin v. Wilks,* 490 U.S. 755, 762 (1989)). Because non-parties are not bound by earlier judgments, it follows that a non-party is not entitled to the benefits of the rules of res judicata in a subsequent action, unless the non-party was in privity with a party to the first action. At the time this Court entered its judgment in the *Leisner* Action, CCHI and the Patels were the only defendants remaining in the suit. Hospitality and McCahill were not then parties to the case and were not in privity with any party who is bound by the final judgment in the *Leisner* Action, and the final judgment cannot be given preclusive effect so as to bar the current claims against them. Thus, the "identical parties" requirement is not satisfied and Hospitality and McCahill cannot assert the defense res judicata in this action.

Defendants nevertheless argue that, although Hospitality and McCahill were not part of the settlement and were not parties at the time the *Leisner* Final Judgment was entered, they should still be bound by it because of "the effect of the final judgment." *Drake* Action, Doc. 47 at 10. According to Defendants, the final judgment in the *Leisner* Action "did not create or set forth an exception for any claims nor did it preserve any of Plaintiffs' claims against any Defendant(s), such as Chop Hospitality and/or McCahill." *Id.*, Doc. 35 at 4. Defendants' argument is misplaced. The Court recognizes, as Defendants point out, that the *Leisner* final judgment itself did not contain language concerning the claims that arose against Hospitality and McCahill after the sale of the restaurant. But it did not need to do so to preserve those claims because the *Leisner* Settlement Agreement explicitly does not apply to claims that arose against Hospitality and McCahill after the sale of the restaurant. Again, where the final judgment was based upon a settlement agreement,

"the express terms of [the] settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement." *Daniels*, 2014 WL 6910492, at *7.

As the Court has already described, the express terms of the *Leisner* Settlement Agreement stated that it was intended to "fully and finally resolve" all cases, claims and disputes "against the Defendants" that "were or could have been raised" in the *Leisner* Action. *Leisner* Action, Doc. 139-1 at 3, ¶ 5. The *Leisner* Settlement Agreement defined "Defendants" as "Chicago Chop House, Inc., Charles Patel, Doris Siemen, and Bharathbhai Patel." *Id*. at 2. The *Leisner* Settlement Agreement did not involve Hospitality and McCahill and does not purport to resolve any claims that arose against Hospitality or McCahill after the sale of the restaurant. There was no agreement to bar future litigation against Hospitality and McCahill concerning wage issues that arose after the sale of the restaurant. Specifically, the *Leisner* Settlement Agreement released CCHI, the Patels, all managers and employees of CCHI, and Defendants' attorneys from all claims that were made or could have been made in the *Leisner* Action. More significantly, the parties explicitly agreed that the release did not include claims that arose against Hospitality or McCahill after the sale of the restaurant in mid-November 2017. *Id*. at 8, ¶ 4.3. Likewise, the final judgment entered by the Court does not foreclose claims that accrued after the sale of the restaurant from being raised in a separate suit. Nothing in the final judgment changed the prior dismissal order or extinguished the ability of employees whose claims arose after the sale of the restaurant from filing a new action against Hospitality and McCahill.

C.   **Final Judgment on the Merits in the First Suit**

Addressing the third element of res judicata, the *Leisner* Action was disposed of by an order and final judgment dismissing the case with prejudice pursuant to a settlement agreement and approval by this Court. Ordinarily, dismissal of an action with prejudice pursuant to a settlement agreement amounts to a final judgment on the merits. *Bohn v. Boiron, Inc.*, 2013 WL

15

3975126, at \*8 (N.D. Ill. Aug. 1, 2013) ("the district court approved the *Gallucci* settlement and dismissed the case with prejudice—there is a final judgment on the merits."); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 593 (7th Cir. 1993) (finding final judgment on the merits was reached when court entered order approving the settlement and dismissing all claims with prejudice). However, the Seventh Circuit has held that "a decision is not final for purposes of appellate jurisdiction if the court rendering it has dismissed one or more of the plaintiff's claims or one or more of the defendants, with leave to refile." *Arrow Gear Co.*, 629 F.3d at 636. The Approval Order and Final Judgment entered in the *Leisner* Action dismissed the twenty-seven plaintiffs' claims against CCHI and the Patels on the merits but the arbitrable claims against Hospitality and McCahill were dismissed without prejudice on the parties' Rule 41(a) motion for voluntary dismissal.

Even if the *Leisner* action was disposed of by a final judgment on the merits, the res judicata effect of that final judgment is controlled by the parties' settlement agreement and it does not have preclusive effect on the claims asserted here. *Norfolk Southern Corp.*, 371 F.3d at 1288. Again, in this case, the terms of the *Leisner* Settlement Agreement and Final Judgment based thereon expressly preserved Plaintiffs' right to pursue claims that arose against Hospitality and McCahill after the sale of the restaurant in a separate action. *Central States, Se. & SW. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 629 (7th Cir. 2002) (citation omitted) ("[i]f a court reserves for later resolution an issue that might otherwise have been adjudicated in the initial proceeding, res judicata will not operate to bar the subsequent suit."). Thus, the *Leisner* Action did not end in a final judgment on the merits of claims that arose against Hospitality and McCahill after the sale of the restaurant. To bar Plaintiffs' claims against Hospitality and McCahill would be contrary to the *Leisner* Settlement Agreement.

16

Notwithstanding the language of the *Leisner* Settlement Agreement and Final Judgment, Defendants argue that Hospitality and McCahill were dismissed without prejudice "because Plaintiffs might have a basis to rescind the order granting the motion to compel arbitration" and that "possibility vanished when the judge entered a final judgment on April 6, 2020, at which point the dismissal without prejudice relating to Chop Hospitality and McCahill ripened into a final judgment." *Drake* Action, Doc.35 at 5. Hospitality and McCahill were dismissed without prejudice so the parties could resolve their dispute through arbitration and return to court, if necessary, following the arbitration or in the event that arbitration was not appropriate for some other reason (i.e., Hospitality and McCahill's refusal to participate in arbitration). The legal effect of the plaintiffs' voluntary dismissal of their claims without prejudice against Hospitality and McCahill was to leave those claims as if they "had never been filed." *Beck v. Caterpillar Inc.*, 50 F.3d 405, 407 (7th Cir. 1995); *Robinson v. Willow Glen Academy*, 895 F.2d 1168, 1169 (7th Cir. 1990) (voluntarily dismissed claim is "treated as if it had never been filed."); *U.S. v. Mt. Vernon Memorial Estates, Inc.*, 734 F.2d 1230, 1236 (7th Cir. 1984) (voluntary dismissal under Rule 41(a)(2) without prejudice "turns back the clock; it is as if the plaintiff's lawsuit had never been brought."). Moreover, generally, "[d]ismissals without prejudice do not bar future suits." *Sroga v. Wasielewski*, 2019 WL 3410082, at *2 (N.D. Ill. July 29, 2019); *Robinson v. Sherrod*, 631 F.3d 839, 843 (7th Cir. 2011) ("Because the dismissal of the present suit was without prejudice, res judicata (claim preclusion) will not bar a future suit based on identical grounds."). Thus, the voluntary dismissal without prejudice did not bar Plaintiffs from refiling the same claims that were dismissed without prejudice in a future suit. That possibility did not "vanish" when this Court entered the final judgment based on a settlement agreement which expressly excluded claims that arose against Hospitality and McCahill after the sale of the restaurant.

To support their argument, Defendants cite *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 517 n.8 (7th Cir. 2010) and *Muhammad v. Oliver*, 547 F.3d 874, 876 (7th Cir. 2008) for the proposition that a dismissal without prejudice sometimes can support a finding of claim preclusion. Neither *Parvati Corp.* nor *Muhammad* support a preclusion finding in this case. The *Muhammad* court stated: "when a suit is abandoned after an adverse ruling against the plaintiff, the judgment ending the suit, whether or not it is with prejudice, will generally bar bringing a new suit that arises from the same facts as the old one." *Muhammad*, 547 F.3d at 876. Unlike the plaintiffs in *Pavarti* and *Muhammad*, Plaintiffs did not "abandon" their claims that accrued after the sale of the restaurant after an "adverse" ruling. The only rulings that proceeded the voluntary dismissal of Hospitality and McCahill were not adverse to plaintiffs on the merits, and the settlement agreement on which the final judgment was based expressly excluded claims that arose after the restaurant was sold in mid-November 2017.[8] Moreover, counsel for all parties, including Hospitality and McCahill, agreed that Hospitality and McCahill should be dismissed without prejudice so the remaining parties could proceed with their agreed upon settlement. *Leisner* Action, Doc. 131 at 3; *see Muhammad*, 547 F.3d at 877 (noting that if "'the parties have agreed in terms or in effect that plaintiff may split his claim,' . . . the bar of res judicata is lifted."). Accordingly, the Court rejects Defendants' argument that the final judgment in the *Leisner* Action converted the dismissal of Hospitality and McCahill without prejudice into a dismissal with prejudice as to claims that arose against them after the restaurant was sold.

---

[8]     There were three substantive rulings in the *Leisner* case. On December 6, 2018, the district court granted Defendants Hospitality, McCahill, and Siemen's motion to compel arbitration in part. *Leisner* Action, Doc. 69. In that same Order, the district court denied Defendants CCHI and the Patels' Rule 12(b)(6) motion to dismiss Count IV of Plaintiffs' Second Amended Collective and Class Action Complaint and to strike References to IWPCA. *Id.* On January 25, 2019, the Court denied a motion brought by Defendants CCHI and the Patels for partial reconsideration of the Court's order of December 6, 2018. *Id.*, Docs 76, 77.

Defendants are correct that "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright," and Hospitality and McCahill asked for a stay in the *Leisner* Action pending arbitration. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3 557, 561 (7th Cir. 2008); *Leisner* Action, Doc. 38 at 1, 2, 6. However, the defendant in *Halim* sought to dismiss the entire complaint on the basis of a binding arbitration clause and the Seventh Circuit treats the issue of "whether to stay the entire case as discretionary in cases involving both arbitrable and nonarbitrable issue." *Volkswagen of American, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007). "[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Id*. (quoting *American Recovery Corp. v Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996)). The *Volkswagen* decision recognized an exception to this rule "when staying arbitrable issues, while allowing nonarbitrable issue to proceed in the district court, risks 'inconsistent rulings' because the pending arbitration is 'likely to resolve issues material to [the] lawsuit.'" *Id.* at 972. In making this determination, the court must consider the risk of inconsistent rulings, the extent to which the parties will be bound by the arbitrators' decision, and the prejudice that may result from delays. *Id*.

In the *Leisner* Action, the district court's decision to compel arbitration as to all claims brought or on behalf of plaintiffs who signed the arbitration agreements did not stay the remaining proceedings during the pendency of the arbitrations. Instead, the remainder of *Leisner* Action proceeded on the merits ending in a settlement. It is not surprising that the district court did not stay the nonarbitrable claims because the briefing on the motion to compel arbitration did not discuss the factors the court must apply and did not provide any reason why the claims that were not covered by the arbitration agreement could not proceed.

19

In sum, and after careful consideration of the parties' arguments, the Court finds that the final judgment in the *Leisner* Action does not preclude Plaintiffs from advancing their wage claims that arose after the sale of the restaurant in this case. In the *Leisner* Settlement Agreement and Final Judgment based upon the approval of the settlement, the parties and the Court expressly reserved the right of employees to bring claims that arose against Hospitality and McCahill after the sale of the restaurant in a second lawsuit. Therefore, the *Leisner* Final Judgment cannot shield Hospitality and McCahill and operate as a bar to Plaintiffs' present action against them.

Finally, the policies underlying the doctrine of res judicata would not be served by applying the doctrine in this case. "The principle underlying res judicata—or claim preclusion—is to minimize 'the expense and vexation attending multiple lawsuits, conserve[ ] judicial resources, and foster[ ] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *Montana v. United States,* 440 U.S. 147, 153–54 (1979)).

*First*, Plaintiffs tried to prevent the expense and abuse of judicial resources that can result from multiple lawsuits. Some of the plaintiffs who signed arbitration agreements asserted their wage claims against Hospitality and McCahill in the *Leisner* Action in the first instance. But the district court, pursuant to Hospitality and McCahill's motion, determined those claims were subject to arbitration and dismissed Hospitality and McCahill without prejudice, freeing Plaintiffs to bring those claims in a future suit. After dismissal of Hospitality and McCahill, the *Leisner* action concerned only claims that arose prior to the sale of the restaurant.

*Second*, Plaintiffs provide a good reason why they needed to return to court to pursue their claims against the current owners of the restaurant: Hospitality and McCahill refused to participate in the arbitration they compelled. Barring Plaintiffs from litigating their claims here would mean

20

that they would never have had the opportunity to litigate their wage claims against Hospitality and McCahill. *Czarniecki*, 633 F.3d at 548 ("The doctrine of [res judicata or] claim preclusion is premised on the idea that, when a claim has been fully litigated and come to judgment on the merits, finality trumps.") (quoting *In re Ingersoll, Inc.*, 562 F.3d 856, 861 (7th Cir. 2009)). When the *Leisner* Action settled in December 2019, the arbitration matter was still proceeding. So filing a separate suit made sense when two months later, on February 26, 2020, the AAA closed the arbitration and declined to administer any future employment matter involving Hospitality.

*Third*, allowing this action to proceed will not unduly burden the Court or Defendants. The judicial burden and Defendants' burden would be the same whether Plaintiffs' wage claims had been reinstated in the *Leisner* Action before the final judgment as Defendants suggest or they proceed in this case.

*Fourth*, the final judgment upon which Hospitality and McCahill seek to rely was based on a settlement which they were not a part of and did not contribute to. They now seek to take advantage of the settlement of that suit to bar claims against them. However, allowing Hospitality and McCahill to use the final judgment created by the settlement is not necessary to free them from multiple and vexatious litigation of the same cause of action because they did not participate in the *Leisner* Action after their early motion to compel arbitration was granted and thus, will not have to defend multiple rounds of litigation.

*Fifth*, allowing this suit to proceed will not result in inconsistent judgments. The *Leisner* Action was dismissed with prejudice based upon the settlement agreement of claims against CCHI and the Patels and without a finding on the merits of those claims. *Leisner* Action, Doc. 139, at 4, ¶7 and 7, ¶ 3; doc. 147, Thus, this suit could not result in an inconsistent decision.

## CONCLUSION

For these reasons, the Court denies Defendants' motion to dismiss [34] on res judicata grounds. This case remains set for status on April 8, 2021 at 9:15 a.m. by telephone.

**SO ORDERED.**

Dated: March 22, 2021

_____
Sunil R. Harjani
United States Magistrate Judge