**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KRISTINA DRAKE, JOSEPH BORUCKI, JOSHUA LEISNER, and AUSTIN LYSY Individually, and on Behalf of All Others Similarly Situated,** | ) ) ) ) ) | |
| | ) | **Case No. 20-cv-01574** |
| **Plaintiffs,** | ) ) | |
| | ) | **Hon. Sunil R. Harjani** |
| **v.** | ) ) | |
| **CHOP HOSPITALITY LLC d/b/a CHICAGO CHOP HOUSE, MATTHEW McCAHILL, PHILIP MARTIN, PETER HODO, ADAM WILL, and JAMES LAWRENCE,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND PLAINTIFFS'**
**UNOPPOSED MOTION FOR SERVICE AWARDS, ATTORNEYS' FEES AND COSTS**

Plaintiffs Kristina Drake, Joseph Borucki, Joshua Leisner, and Austin Lysy, on behalf of

themselves and all individuals who have asserted claims in above-captioned litigation (the

"Litigation"), specifically, Leslie Aceves, Rufino Alvarez, George Bilgere, Sarah Blaylock, Brian

Bockert, Julia Correa, Madeira deFreitas, Julia Duque Gallego, Steven Ellis, George Euring,

Nozanin Farrukhzoda, Walter Fench, Eric Frostick, Antonio Gandara, Angela Hernandez,

Demetrio Hernandez, Sinead Kearns, Joseph Klein, Alyse Matoian, Vincent Milzarek, Catherine

Muellner, Ramon Noriega, John O'Connor, Edgar Olacoaga, Tyler Pape, Robert Puhl, Meghan

Reilly, Lauren Rende, Jaime Rodriguez, Jaron Rowe, Jaboea Sigmon, Christopher Tallian,

Efthimia Tsakalis, Andrea Vanderlaan, and Todd Victory (together with Named Plaintiffs, the

"Plaintiffs"), and Defendants Chop Hospitality, Inc., Philip Martin, Peter Hodo, and Adam Will

(collectively the "Chop Defendants") (together with Plaintiffs, the "Settling Parties"), through

their undersigned counsel, jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

The Parties have agreed to the settlement of this *bona fide* FLSA dispute following arm's-length negotiations that included the exchange of employment data and other documentation, extensive communications between counsel, and a private mediation. The Parties submit that the terms of the Settlement Agreement are fair, reasonable, and adequate, particularly in light of the existence of disputed issues of fact, disputed issues of law with respect to liability, uncertainty as to whether each Plaintiff would obtain a judgment in his or her favor, and the risk of possible appeals.

## I.   PROCEDURAL HISTORY

On March 3, 2020, Plaintiffs Drake, Borucki and Leisner filed a three-count collective action complaint on behalf of servers and bartenders at the Chicago Chop House restaurant alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1, *et seq*. and the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chicago, Illinois, Municipal Code § 1-24-010, *et seq*. by Defendants related to the tip pool at the Chop House. (Dkt. No. 1).[1] Specifically, the Plaintiffs alleged that Defendants improperly kept money from the tip pool and/or distributed Plaintiffs' tip pool contributions to ineligible participants, thereby making use of the tip credit unlawful. On July 10, 2020, Plaintiff Austin Lysy joined the case as a Named Plaintiff and the Plaintiffs named James Lawrence as an additional Defendant and added additional wage claims related to the tip credit under the same statutes already at issue in the case. (Dkt. 21). Plaintiffs did not move to certify a class under the

---

[1] For some of the Plaintiffs and some of the Defendants, some of the allegations in this case were originally brought in a 2018 case in this District, *Joshua Leisner, et al. v. Chop Hospitality LLC, et al*., case no. 18-cv-04162. For reasons known to the Court and not relevant here other than showing how thoroughly this case has been litigated, the claims in this case were ultimately not litigated in that lawsuit.

IMWL or the Chicago Wage Ordinance.

On December 7, 2020, the Court granted Plaintiffs' motion to conditionally certify a collective action and facilitate notice pursuant to 29 U.S.C. §216(b). (Dkt. No. 51). Forty-one people opted in, creating a total class of 45 plaintiffs. Discovery revealed that the class period was shorter than Plaintiffs originally believed, cutting off the class period and ending the viability of the claims of six opt-in Plainitffs. Therefore Shannon Muller, Valerie Morgan, Latonya Holmes, Joshua Irizarry, Dianne Leppin, and Fatina Zamnoun, are not party to the Settlement Agreement. Defendants Matthew McCahill and James Lawrence are also not party to the Settlement Agreement, but Plaintiffs will file a motion to dismiss them with prejudice.[2] The Chop Defendants have denied all of the claims asserted by Plaintiffs and deny all liability associated with any of the facts or claims alleged in the Litigation.

After extensive written discovery, an early exploration of possible settlement with the Court's assistance, discussions about the relevant law, and numerous exchanges of settlement proposals, the Settling Parties agreed to attempt global resolution of all claims with the assistance of a private mediator, which took place on February 7, 2022. While preparing for the mediation, the Parties continued to engage in extensive written discovery.

Although Plaintiffs believed their case was strong, they recognized that a complete victory on every aspect of their claims, including the measure of damages, was far from certain. Likewise, the Chop Defendants believed they had many defenses to the various federal, state and municipal wage claims, but could not know how the case would ultimately conclude, and they believed that their best interests were served by seeking resolution of all claims. The Settling Parties took into

---

[2] For Mr. McCahill, the Plaintiffs anticipate filing that motion within a week of the Court's approval of this Motion. For Mr. Lawrence, the Plaintiffs will file within one week of the conclusion of all issues related to their Motion for Sanctions against Mr. Lawrence, which this Court granted on February 26, 2022. (Dkt. No. 157).

3

account the costs and risks associated with further litigation when engaging in the settlement process. The Settling Parties agreed to settle the issues, matters, and things in dispute between and among them, the terms of which have been formalized in their Settlement and General Release Agreement ("Settlement Agreement"), attached as Exhibit A.

## II.      STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS

In the Seventh Circuit, to ensure a valid and enforceable release of an FLSA claim, parties typically request a court of competent jurisdiction to approve the settlement. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). When reviewing a proposed FLSA settlement, the district court should scrutinize the settlement and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

## III.      ARGUMENT

### A.      The Proposed Settlement is the Product of Contested Litigation.

The settlement reached by the Settling Parties was achieved as the result of contested litigation to resolve *bona fide* disputes concerning Plaintiffs' entitlement to damages due to an alleged tip pool violation under the FLSA, IMWL, and a municipal wage ordinance. On liability, Plaintiffs would have to overcome Defendants' defense that all tip policies were in compliance with federal, state and municipal law. This was particularly true for the portion of the class period

VP/#55097356.3

from July 2018 through July 2020, which is more than two-thirds of the entire class period. Thus, as in any complex action, the Plaintiffs generally faced uncertainties of going forward with this litigation. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"). In addition, *bona fide* disputes exist as to whether a two- rather than three-year FLSA statute of limitations applied based on the facts of this case and whether the Defendants' alleged FLSA violations, if proven, were willful.

The Chop Defendants deny liability or wrongdoing of any kind associated with Plaintiffs' claims, and affirmatively contend that all Plaintiffs were fully paid for all wages and tips that they were due. Plaintiffs believe they have meritorious claims. The Settling Parties have determined, however, that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests. In light of these realities, the Settling Parties believe that the Settlement Agreement is the best way to resolve the disputes between and among them.

**B.     The Settlement is Fair, Adequate, and Reasonable.**

In reviewing the record and evaluating the strength of the case to determine whether a proposed FLSA settlement is "a fair and reasonable resolution of a *bona fide* dispute over [the application of the] FLSA['s] provisions," *Lynn's Food Stores, Inc.*, 679 F.3d at 1355, courts should consider the following non-exclusive factors: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the Plaintiffs to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the

VP/#55097356.3

settlement fund in light of all the risks of litigation." *Butler v. American Cable & Telephone, LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

Here, the Settling Parties' settlement is fair and reasonable and meets all applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, likely duration of the litigation and the range of reasonableness of the settlement fund in light of the possible recovery under federal and state wage and hour laws. Namely, the Settling Parties were able to reach a settlement on a collective basis before incurring the expense and inefficiency of protracted litigation and after exchanging adequate discovery to perform the necessary calculations to determine potential range of recovery in this case if Plaintiffs were successful in proving their federal, state and/or municipal wage and hour claims. Accordingly, the settlement is appropriate at this stage of the proceedings.

The settlement here is not the product of fraud or collusion. The settlement was reached in an adversarial proceeding through arm's length negotiations between capable attorneys who have extensive experience with wage and hour claims. The settlement agreement was procured between counsel for the Settling Parties after a mediation overseen by Fern Singer, an experienced litigator with considerable experience in employments law and also an experienced mediator who has overseen numerous mediations. Counsel for the Settling Parties exchanged numerous proposals and counterproposals before the mediation and were able to narrow the bridge between their positions and reach a compromised settlement.

Counsel for the Settling Parties are experienced in complex class and collective action litigation and have represented clients in numerous wage and hour class and collective actions. Additionally, counsel for the Settling Parties were thoroughly familiar with the facts and legal issues when settlement was reached. In the end, experienced counsel on both sides of the matter

6

deemed the settlement fair and reasonable and a global means of ending this protracted litigation.

Finally, the amount of the settlement is reasonable in relation to the potential recovery. As in all wage and hour claims, particularly in the collective action context, the nature and amount of recoverable damages is uncertain. Even if a trier of fact ultimately found liability, a range of possible damages exist depending on factors including, but not limited to, the Settling Parties and their witnesses' credibility, the limitations in the available data tracking work performed, the applicable statute of limitations, and Defendants' knowledge, willfulness and good faith. As set forth above, Defendants produced adequate discovery to perform the necessary calculations to determine the potential range of recovery in this case.

With the help of the mediator, the parties reached a global settlement of all claims that results in the allocation of $268,478.36 to the thirty-nine (39) Plaintiffs. The distribution, which averages $6,884.06 per Plaintiff, is based on an analysis of data from over 1,643 weeks worked during a 2-year, 8-month period.[3] To determine an equitable distribution among the Plaintiffs, the settlement funds were allocated proportionately based on the number of hours each Plaintiff worked in the class period, resulting in each Plaintiff receiving approximately $7.87 for every hour they worked in the class period in which Defendants took a tip credit.

The settlement also provides for reasonable attorneys' fees and costs and a service payment to the Named Plaintiffs. Plaintiffs who favorably settle their cases are entitled to reasonable attorneys' fees and costs under the FLSA. *See* 29 U.S.C. § 216(b) (the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action") (emphasis added). The Settlement Agreement provides that

---

[3] While the statute of limitations period and the time that has passed since the start of the lawsuit would allow for a significantly longer class period, the Defendants did not buy the restaurant until November 2017 and discovery revealed documentation reflecting that the tipping policies a tissue were no longer in effect as of mid-July 2020.

Plaintiffs' counsel will receive $119,276.45 in attorneys' fees and $745.20 in reasonable out-of-pocket costs, a compromise sum that is consistent with the attorney-client agreement executed by the Named Plaintiffs and represents 30% of the settlement amount. (Ex. A, Settlement Agreement § 2.1.)

In addition, in consideration for executing a general release of their claims arising out of their work at the Chicago Chop House restaurant, and for their significant contributions to the prosecution and resolution of the lawsuit, the Settlement Agreement provides that Named Plaintiffs Kristina Drake, Joseph Borucki and Austin Lysy will each receive a service payment of $2,500.00 in addition to their settlement share, while Named Plaintiff Joshua Leisner will receive a service payment of $4,000. (Ex. A, Settlement Agreement § 2.1.). Mr. Leisner's higher award reflects the fact that he was the individual that first alleged illegal behavior by Defendants, sought out and retained legal counsel, recruited other Plaintiffs, filed an initial lawsuit in 2018 that he was later compelled to leave, filed an arbitration demand, and then filed this lawsuit. "[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)).

The Named Plaintiffs played an active role at every step of this litigation. They initiated the lawsuit and the Amended Complaint, reviewed and approved the Complaints, conferred and corresponded with Plaintiffs' Counsel, provided sworn declaration testimony in support of the motion for notice to similarly-situated employees, personally contacted potential opt-in plaintiffs, and personally attended and participated in the mediation. The amount sought for Ms. Drake, Mr.

Borucki, Mr. Leisner and Mr. Lysy comports with service payments awarded to Named Plaintiffs in combined state and federal wage actions of precisely this type. *See, e.g.*, *Hauser, et al. v. Alexian Brothers Medical Center, et al.*, No. 1:15-cv-6462, ECF No. 101 (N.D. Ill. Apr. 6, 2017).

Based on the aforementioned factors, the Settling Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interests of the Settling Parties, and not worth the costs and risks associated with continued discovery, motion practice and potential trial, including any appeals.

## IV.    CONCLUSION

For all the above reasons, the Settling Parties respectfully request that this Court set a date for a hearing to approve the Settlement Agreement and at the hearing or thereafter enter an order (1) approving the Settlement Agreement as fair and reasonable, including the payments to Plaintiffs, the releases of claims, the service payments to the Named Plaintiffs, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the case, initially without prejudice but that will automatically convert to a dismissal with prejudice unless a party seeks and obtains relief from the Court by April 30, 2022; and (3) retaining jurisdiction only for the purpose of enforcing payment of the Gross Settlement Amount as set forth in the Settlement Agreement.

VP/#55097356.3

Dated:  March 18, 2022

DEFENDANTS CHOP HOSPITALITY
LLC, PETER HODO, PHILIP MARTIN
AND ADAM WILL

KRISTINA DRAKE, JOSEPH BORUCKI,
JOSHUA LEISNER, and AUSTIN LYSY
Individually, and on Behalf of All Others
Similarly Situated

By:   */s/ Elizabeth N. Hall*
     One of Their Attorneys

By:   */s/ Daniel Zemans*
     Their Attorney

Elizabeth N. Hall, Bar No. 6286976
Thomas M. Wilde, Bar No. 6217048
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
ehall@vedderprice.com
twilde@vedderprice.com
T:  (312) 609-7500

Daniel Zemans
Law Offices of Daniel Zemans, LLC
2023 W. Berteau Avenue
Chicago, IL 60618
dzemans@zemans-law.com
T: (773) 706-7767

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day, March 18, 2022, filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record

/s/ Daniel Zemans

Daniel Zemans
Law Offices of Daniel Zemans, LLC
2023 W. Berteau Avenue
Chicago, IL 60618
Phone: (773) 706-7767
Email: dzemans@zemans-law.com

VP/#55097356.3